**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 7:26-cv-00338<br><br>Complaint for Patent Infringement<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Headwater Research LLC ("Headwater") alleges as follows against Defendant Google LLC ("Google"):

**INTRODUCTION**

1. This complaint arises from Google's unlawful infringement of U.S. Patent No. 11,973,804 ("'804 patent") ("Asserted Patent").

2. A core aspect of the accused systems is Google Cloud, Google's cloud-computing business, including its core online cloud storage, compute, and database management functionalities offered to Google Cloud customers. As detailed below, Google makes substantial revenue and gains competitive advantages from its infringement of the Asserted Patent for Google Cloud services.

3. Google Cloud is built on a policy-based authorization and access-control architecture that sits at the center of every accused service. Requests to Google Cloud services are authenticated and authorized against the policies that Google's Cloud servers maintain for the

requesting principal and for the targeted resource, and Google's enforcement points evaluate and apply those policies to each request.

4. The accused systems also enable Google to track, meter, bill, and charge for usage of its services. Google Cloud measures each customer's consumption of each service, applies the quota, billing, and cost-management policies associated with that customer's account and service plan, and bills the customer based on that measured usage.

5. The accused systems further generate and deliver notifications in connection with the policies Google applies, including notifications advising users of their usage against applicable limits, thresholds, and budgets, which Google causes to be rendered to users of the accused services on their devices.

6. Google's policy-based access control and usage accounting are fundamental to Google's ability to sell cloud services at scale. They are what allow Google to host many customers, and those customers' applications and devices, on shared cloud infrastructure while authorizing, controlling, and accounting for each customer's service usage.

7. Google delivers the accused services over networks to end-user devices, including to end users of Google's own applications and services and to end users of the applications and services that Google's customers build, deploy, and operate on Google Cloud.

8. On information and belief, Google's revenues derived from the Accused Instrumentalities make up a portion of its revenues from Google Cloud. Alphabet reported approximately $58.7 billion in Google Cloud revenues for 2025, with approximately $13.9 billion of Google Cloud operating income in the same period, and Google Cloud revenues have continued to grow rapidly, reaching $24.8 billion in the second quarter of 2026 alone—an increase of approximately 82% year over year—with $8.8 billion of Google Cloud operating income in that

quarter. See https://www.sec.gov/Archives/edgar/data/1652044/000165204426000012/googexhibit991q42025.htm; https://www.sec.gov/Archives/edgar/data/1652044/000165204426000066/googexhibit991q22026.htm.

**<u>GOOGLE'S KNOWLEDGE OF THE ASSERTED PATENT</u>**

9. The '804 patent issued on April 30, 2024. On information and belief, Google has had knowledge of the '804 patent, and of the infringement thereof by the Accused Instrumentalities, since at least the issuance of the '804 patent, and in any event since no later than the filing and service of this Complaint.

10. On information and belief, Google has monitored, and continues to monitor, the Headwater patent portfolio of which the '804 patent is a part. That monitoring began no later than March 2023, when Headwater served its Complaint in Case No. 2:23-cv-00103-JRG-RSP (the "103 Case") against Samsung, and has continued through the present. The '804 patent names the same lead inventor, Dr. Gregory Raleigh, as numerous other Headwater patents that Headwater has asserted against Google's customers and business partners in the cases identified below, and Google supplies the operating system, back-end services, and cloud infrastructure at issue in those cases.

11. On information and belief, Google's monitoring of the Headwater portfolio encompassed the '804 patent from the time the '804 patent issued. In the alternative, on information and belief, Google turned a blind eye to infringement when its customers and business partners were repeatedly accused of infringement based on Google's own technology, and instead of seeking to license the Headwater patents that Google's own systems were infringing, Google

quietly continued its infringement while simply hoping that it would not be sued. In the alternative, on information and belief, Google is willfully infringing under the doctrine of "efficient infringement," where Google continues infringement while hoping that the amount of recovered damages will be less than the actual benefit that Google receives from its ongoing patent infringement.

12. Patent cases between Headwater and Google's customers and business partners include:

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:22-cv-00422 (E.D. Tex.), filed in 2022.
- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:22-cv-00467 (E.D. Tex.), filed in 2022.
- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-00103 (E.D. Tex.), filed in 2023.
- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-00641 (E.D. Tex.), filed in 2023.
- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:24-cv-00228 (E.D. Tex.), filed in 2024.
- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:24-cv-00627 (E.D. Tex.), filed in 2024.
- *Headwater Research LLC v. Verizon Commc'ns Inc.*, No. 2:23-cv-00352 (E.D. Tex.), filed in 2023; see also Nos. 2:23-cv-00377 and 2:23-cv-00379 against T-Mobile and Nos. 2:23-cv-00397 and 2:23-cv-00398 against AT&T.
- *Headwater Partners II LLC v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:24-

cv-00007 (E.D. Tex.), filed in 2024; see also No. 2:24-cv-00015 against T-Mobile and No. 2:24-cv-00016 against AT&T.

- *Headwater Research LLC v. Verizon Commc'ns Inc.*, No. 2:25-cv-00156 (E.D. Tex.), filed in 2025; see also Nos. 2:25-cv-00164 and 2:25-cv-00215 against T-Mobile.
- *Headwater Research LLC v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:25-cv-00391 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00359 against T-Mobile and No. 2:25-cv-00428 against AT&T.
- *Headwater Research LLC v. T-Mobile USA, Inc.*, No. 2:25-cv-00462 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00463 against Verizon and No. 2:25-cv-00464 against AT&T.
- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00685 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00686 against T-Mobile and No. 2:25-cv-00687 against Verizon.
- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00690 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00691 against T-Mobile and No. 2:25-cv-00692 against Verizon.
- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00693 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00694 against T-Mobile and No. 2:25-cv-00695 against Verizon.
- *Headwater Research LLC v. Cellco Partnership d/b/a Verizon Wireless*, No. 2:25-cv-00709 (E.D. Tex.), filed in 2025; see also No. 2:25-cv-00710 against T-Mobile and No. 2:25-cv-00711 against AT&T.

13. Headwater has also filed the following actions against Google itself, each asserting

Headwater patents: *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00231 (W.D. Tex.); *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00367 (W.D. Tex.); *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00372 (W.D. Tex.); and *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00380 (W.D. Tex.).

14. Based on related Headwater patent cases against Google and Google's business partners, based on Google's provision of Android, back-end services, and cloud infrastructure to the accused products and services in those cases, based on the involvement of Google's corporate witnesses at trial, based on the $278.8 million and $175 million verdicts, and based on ongoing exposure to the Headwater patent family, it is believed that Google is coordinating with multiple defendants in multiple patent litigation cases against Headwater, that Google is engaging in ongoing monitoring of the Headwater patent family (including the '804 patent) related to multiple Headwater patents, and that Google has analyzed and is aware of Google's infringement exposure to Headwater's patent family (including Google's infringement exposure to the '804 patent).

**BACKGROUND REGARDING HEADWATER AND DR. RALEIGH**

15. Dr. Gregory Raleigh—the primary inventor of the Asserted Patent—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

16. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products

have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://web.archive.org/web/20220628132409/https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

17. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

18. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

19. Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything

else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

20. After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks' chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

21. Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

22. After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

23. In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patent in this

action describes and claims some of the extraordinary inventions developed by Dr. Raleigh and the Headwater team.

**PLAINTIFF HEADWATER AND THE ASSERTED PATENT**

24. Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

25. Headwater is the owner of U.S. Patent No. 11,973,804, titled "Network service plan design," which issued April 30, 2024. A copy of the '804 patent is attached to this complaint as Exhibit 1.

**DEFENDANT GOOGLE AND THE ACCUSED INSTRUMENTALITIES**

26. On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc, and a Delaware limited liability company, with an established place of business at 500 West 2nd Street, Austin, Texas 78701. Google can be served through its registered agent, Corporation Service Company (CSC) at 211 E. 7th Street, Suite 620, Austin, TX 78701.

27. The Accused Instrumentalities include Google Cloud servers and services, and all versions and variations thereof since the issuance of the Asserted Patent, including without limitation Google Cloud services and infrastructure supporting and/or providing its online cloud storage, compute, and database management functionalities offered to Google Cloud customers; and all related identity, policy, authorization, access-control, usage-metering, notification, and billing and cost-management functionality, including the products and services identified in Exhibit 2.

28. Google infringes by making, using, operating, importing, selling, and/or offering for sale the Accused Instrumentalities. Google also uses, operates, places into service, and

otherwise controls the accused Google Cloud systems in the United States. Google also infringes Headwater's patented technology by inducing infringement by customers and end-users of the Accused Instrumentalities in the United States.

## JURISDICTION AND VENUE

29. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

30. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

31. This Court has personal jurisdiction over Google in this action because Google has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Google would not offend traditional notions of fair play and substantial justice. Google, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Western District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Headwater's patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling the accused Google Cloud services and related infrastructure.

32. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Google resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

33. On information and belief, Google provides the accused Google Cloud services to

customers throughout this District, including in Austin. Requests that those customers make to Google Cloud APIs, including requests from businesses, developers, and connected devices located in this District, are authenticated and authorized by the accused Google Cloud servers, which evaluate and enforce the policies applicable to each request, and are metered and accounted for by the accused Google Cloud usage-accounting and billing systems.

34. On information and belief, Google employs engineering, product-operations, sales, and customer-engineering personnel at its Austin campus in this District, including personnel who work on Google Cloud. From their offices in this District, those employees develop, operate, market, and sell the accused Google Cloud services to customers, including customers located in this District.

35. On information and belief, numerous third parties in this District, including businesses, application developers, and operators of connected devices, use the accused Google Cloud services in this District, including by making requests to Google Cloud APIs that the accused Google Cloud control plane authenticates, authorizes, meters, and accounts for.

36. Google maintains at least one regular and established place of business in this District. For example, Google invested $20 million to build a corporate office at 500 West 2nd Street, Austin, Texas 78701. See, e.g., https://trerc.tamu.edu/news-talk/google-this-20-2m-design-budget-for-austin-office/. Google also operates a retail store in this District at 11701 Domain Blvd., Austin, Texas 78758. See, e.g., https://store.google.com/magazine/google-store-domainnorthside-austin?hl=en-US.

37. Further, upon information and belief, Google has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

**COUNT 1 – INFRINGEMENT OF THE ’804 PATENT**

38. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

39. On April 30, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,973,804, titled “Network service plan design.” Ex. 1.

40. Headwater is the owner of the ’804 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

41. The written description of the ’804 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

42. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’804 patent, and Headwater is entitled to damages for Google’s past infringement.

43. Google has directly infringed (literally and equivalently) and induced others to infringe the ’804 patent by making, using, selling, offering for sale, or importing products, services, and systems including Google Cloud that infringe the claims of the ’804 patent and by inducing others to infringe the claims of the ’804 patent without a license or permission from Headwater, such as, for example, inducing customers and developers to use the infringing Google Cloud services.

44. Exhibit 2 provides a description of the Accused Instrumentalities and a chart showing how they infringe at least claim 1 of the ’804 patent, which Headwater provides without

the benefit of information about the Accused Instrumentalities obtained through discovery.

45. Google knowingly and intentionally induces and contributes to infringement of the ’804 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’804 patent and the infringing nature of the Accused Instrumentalities for at least the reasons discussed above. See Google’s Knowledge of the Asserted Patent above, which is incorporated by reference herein. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

46. Despite this knowledge, Google has continued to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’804 patent. Google does so knowing and intending that its customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’804 patent, thereby specifically intending for and inducing its customers to infringe the ’804 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and indemnifying patent infringement within the United States.

47. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to its customers, would constitute willful infringement of the ’804 patent.

48. The ’804 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-

generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

49. Headwater has been damaged by Google's infringement of the '804 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

50. Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A. A judgment in favor of Headwater that Google has infringed the Asserted Patent, and that the Asserted Patent is valid and enforceable;

B. A judgment and order requiring Google to pay Headwater past and future damages arising out of Google's infringement of the Asserted Patent in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest, as provided under 35 U.S.C. § 284;

C. A judgment and order requiring Google to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D. A judgment that Google's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E. A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F. Any and all other relief to which Headwater may be entitled.

Dated: August 27, 2026

Respectfully submitted,

*/s/ Marc Fenster*

Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
Paul A. Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Ryan K. Lundquist
CO State Bar No. 56449
Email: rlundquist@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
RUSS AUGUST & KABAT
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**